IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF INDIANA
NOTHERN DISTRICT
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN FRALISH,<br><br>        Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL<br>AUTOMOBILE INSURANCE CO.;<br>LEXISNEXIS® RISK SOLUTIONS,<br>INC., VERISK ANALYTICS, INC.<br>        Defendants. | Civil Action No. 3:20-cv-62<br>  1.  15 U.S.C. § 1681 et seq. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff John Fralish ("Plaintiff" or "Mr. Fralish"), through his attorneys, alleges the following against Defendants State Farm Mutual Automobile Insurance Co. ("State Farm") and Lexis Nexis® Risk Solutions, Inc. ("Lexis Nexis"), Verisk Analytics, Inc. ("Verisk") (collectively "Defendants"):

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 *et seq*. (Federal Fair Credit Reporting Act or "FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction of the court arises under 28 U.S.C. § 1331, and 15 U.S.C. § 1681p and 28 U.S.C. §1332.

3. The Plaintiff and the Defendants are citizens of different states pursuant to 28 U.S.C. §1332(a)(1), and the amount in controversy exceeds $75,000.00 pursuant to 28

1

U.S.C. §1332(b).

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in the District of Indiana.

5. Defendants transact business within the geographic boundaries of the District of Indiana; therefore, personal jurisdiction is established as to all defendants.

## PARTIES

6. Plaintiff John Fralish is a natural person and a consumer as defined by 15 U.S.C. §1681a(c) residing in St. Joseph County, Indiana.

7. Defendant, State Farm Mutual Automobile Insurance, Co., ("State Farm") is a foreign limited liability company and can be served at its principle place of business located at, One State Farm Plaza Bloomington, IL 61710. At all times relevant to this action, Defendant State Farm was an "insurance company" or "insurer" and "furnisher" as governed by the FCRA.

8. Defendant Lexis Nexis® Risk Solutions, Inc. ("LEXIS") is a Delaware corporation with its principal place of business located at 1000 Alderman Drive, Alpharetta, GA 30005.

9. LEXIS is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f). LEXIS is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. LEXIS can be served through its registered agent, C T Corporation System at 150 W. Market St., Suite 800, Indianapolis, IN 46204.

10. LEXIS disburses such *consumer reports* to third parties under contract for

monetary compensation.

11. Verisk Analytics, Inc. ("Verisk") is a Delaware corporation. Verisk's principal place of business is 545 Washington Blvd., Jersey City, New Jersey, 07310.

12. Verisk is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f). Verisk is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties. Verisk is also a "reseller" and "user" of consumer report information as defined by the FCRA.

13. Verisk disburses such consumer reports to third parties under contract for monetary compensation.

14. At all times material to this Complaint, State Farm, Verisk and LEXIS, and their related entities, act in concert with one another for the purpose of collecting, maintaining, compiling, and disbursing consumer reports.

15. Among the many products maintained and sold by LEXIS are consumer reports that contain information used by the insurance industry to make insurance decisions, including but not limited to, whether to extend insurance coverage to consumers and how much it should cost.

16. LEXIS holds itself out as:

> LexisNexis Risk Solutions Inc. provides content-enabled workflow solutions. The Company offers products in the areas of data and analytics, fraud detection and prevention, identity verification and authentication, investigation, receivables management, and screening. LexisNexis Risk Solutions operates in the United States. LexisNexis Risk Solutions is a leader in providing essential information that helps customers across industries and government

> predict, assess and manage risk. Combining cutting-edge technology, unique data and advanced scoring analytics, we provide products and services that address evolving needs in the risk sector.
>
> LexisNexis® products are used by law enforcement officials, non-profit organizations, businesses, and government agencies for a host of important and socially beneficial purposes.
>
> . . .
>
> Much of the data held by LexisNexis has been collected from public record and publicly-available data sources. We also use proprietary data and information from third-party data sources in compiling our information products. LexisNexis is committed to the responsible use of sensitive consumer information. We have a multi-layered approach that includes security systems intended to ensure the confidentiality and integrity of sensitive information about consumers. We use industry-standard access control software and methods. Our information and system security professionals strive to maintain reasonable data security measures. We recognize that the trust of our customers, business partners, and the public at large is critical to our continued success.

17. Through its family of companies, LEXIS offers a variety of products and services including the LexisNexis CLUE Report:

> Also known as a Loss History Report, a CLUE Report is a record of insurance losses. Each month, participating homeowners and auto insurance companies report claims history information, which goes into a central database called the Comprehensive Loss Underwriting Exchange (CLUE).
> Insurance companies also request this data by inputting search criteria such as the insurance applicant's name, address, and date of birth.
> Reports are typically used by insurance companies to help them determine rates for home or auto policies.

18. There are two types of such reports: CLUE Auto Report CLUE Personal Property Report.  Here's what's included:

- Personal information of the individual, such as their name, date of birth, and gender
- Description of the property
- Cause of loss (i.e. the claim) on the personal property or car
- Location of loss
- Date of the loss
- Amount and status of each claim
- Type of policy (i.e. condo, flood, fire, homeowners, mobile home, earthquake, bodily injury, collision, medical payment, comprehensive)
- General info, such as the policy number, claim number, and the name of the insurance company

19. Verisk holds itself out as:

> About Verisk Analytics Verisk Analytics (Nasdaq: VRSK) is a leading provider of information about risk to professionals in insurance, government, and risk management. Using advanced technologies to collect and analyze billions of records, Verisk Analytics draws on vast industry expertise and unique proprietary data sets to provide predictive analytics and decision-support solutions in fraud prevention, actuarial science, insurance coverages, fire protection, catastrophe and weather risk, data management, and many other fields. In the United States and around the world, Verisk Analytics helps customers protect people, property, and financial assets.

20. Through its family of companies, Verisk offers a variety of products and services:  Verisk Analytics risk assessment products and services include:

- data and statistical services
- actuarial services
- standardized insurance policy programs
- underwriting information
- rating integrity tool

21. Verisk Analytics decision analytics offerings include capabilities for:

- predicting future losses
- selecting and pricing risk
- detecting and preventing fraud
- quantifying losses that have already happened

22. Defendants all acted through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

23. In or about January of 2019, Mr. Fralish became aware that there were serious derogatory errors in how a State Farm tradeline was being reported on his LEXIS consumer report when he received a declination letter from a potential insurer.

24. Mr. Fralish sent a written request for his LEXIS NEXIS CLUE report to LEXIS NEXIS, attaching a copy of his driver's license, a utility bill, and other identifying information per the instructions.

25. LEXIS NEXIS sent a response denying his request for the CLUE report based on the pretextual reason that Mr. Fralish had failed to send identifying information.

26. Hence, Mr. Fralish sent a second written request for his LEXIS NEXIS CLUE report to LEXIS NEXIS, attaching a copy of his driver's license, a utility bill, and other identifying information per the instructions.

27. Mr. Fralish obtained a LEXIS NEXIS CLUE Report that contained information provided to it by State Farm, among others:

28. For January 2019, a non-existent claim for a car accident was reported but there had been no car accident in January 2019.

29. For July 2018, there was a report on the State Farm tradeline that certain incorrect amounts had been paid out. These amounts were greatly inflated.

30. For August 2018, the CLUE Report showed an incorrect fault status and payout.

31. On or about February 4, 2019, Mr. Fralish submitted a detailed, written dispute

to LEXIS, explaining that the information furnished by State Farm and reported by LEXIS was erroneous and requested LEXIS provide him with the methods and procedures utilized in investigating and verifying the disputed information. He included details regarding the correct date of accident and status of the claim, as well as corroborating evidence of his identity and the dispute, including his birthday, social security number, his driver's license number, a copy of his government issued photo identification, and a current bank statement and utility bill.

32. Mr. Fralish sent a substantially similar letter to LEXIS again on or about February 13, 2019.

33. On or about March 7, 2019, and on or about March 8, 2019, LEXIS responded to Mr. Fralish's dispute, informing him the disputed claims had been verified.

34. On or about March 16, 2019, Mr. Fralish submitted similar detailed, written disputes to State Farm and LEXIS, explaining that the information furnished by State Farm and reported by LEXIS was erroneous.  He included details regarding the correct date of accident and status of the claim and notified State Farm that he disputed the information with LEXIS. Mr. Fralish also provided corroborating evidence of his identity and the dispute, including his birthday, his driver's license number, a copy of his government issued photo identification, and a current bank statement and utility bill.

35. On or about March 18, 2019, Mr. Fralish sent a letter in response to the two letters from LEXIS, requesting LEXIS to provide him with the methods and procedures utilized in investigating and verifying the disputed information for a **third time.**

36. On or about March 18, 2019, Mr. Fralish also sent a second letter to State Farm

that is substantially similar to the one he sent on March 16, 2019.

37. Mr. Fralish received a response letter from LEXIS on or about April 9, 2019 that verified the Medical Payment Loss claim from August 2, 2019 as closed.

38. In response to the April 9, 2019, letter, Mr. Fralish sent another detailed letter to LEXIS on or about April 17, 2019 and requested LEXIS to provide him with the methods and procedures utilized in investigating and verifying the disputed information for a **fourth time.**

39. On or about April 17, 2019, Mr. Fralish received a response letter from State Farm stating falsely that "these amounts were correctly reported." In this letter, State Farm cited the accurate numbers as provided by Mr. Fralish, however, as the CLUE Report shows, these were not the same numbers that had been reported. In other words, the response letter was an admission that the reported numbers were inaccurate, and that the accurate numbers were otherwise. Further, the response letter shows that State Farm had access to the correct information but failed to do a reasonable investigation or to correctly read the information that it had readily available, and that the response was just a rote (and incorrect) assessment that the report was accurate.

40. Around the same time period, Mr. Fralish sent a second written request for an updated CLUE report to Lexis Nexis, to which LEXIS never responded.

41. On or about May 15, 2019, State Farm sent a letter requesting for Mr. Fralish to call a claim's specialist to speak directly about his disputes.

42. Mr. Fralish sent another detailed, written dispute to State Farm, in response to the May 15, 2019 letter, on or about May 25, 2019. He received a response from State

Farm and the response claimed that it had verified the inaccurate information, and provided additional inaccuracies, including the wrong driver name and other selectively reviewed information.  The letter was largely non-responsive to the actual dispute.

43. Hence, State Farm and LEXIS refused to correct the inaccuracies in his report. State Farm failed to conduct a reasonable investigation of the dispute and continued to report the erroneous information.  LEXIS failed and refused to even send Mr. Fralish an updated report.

44. LEXIS and State Farm continued to report the erroneous and derogatory information to third-parties.

45. The inaccurate information disparages the Plaintiff and portrays him as a credit, employment and insurance risk due to multiple vehicle losses and conflicting information about his accident history, claims paid, and his identity.

46. In compiling and furnishing Mr. Fralish's consumer report, LEXIS failed to maintain reasonable procedures to assure maximum possible accuracy of the information it reported about him.

47. Even after the Defendants received detailed disputes from Mr. Fralish pursuant to the FCRA, the Defendants failed to correct the inaccurate information.

48. As a result of the Defendants' conduct, Mr. Fralish has suffered an injury in fact which the FCRA was specifically designed to prevent.

49. The Defendants hold themselves out to be experts in their field, and they have been sued multiple times before for their violations of the FCRA.  They know that their procedures – both in maintaining procedures to assure maximum accuracy and

investigating disputes – are inadequate to protect the Plaintiff's rights.

50. All of the Defendant's actions, including those by and through their agents, were exactly as they intended and were not mistakes such that it was willful.

51. As a result of the Defendants' conduct and inaction, Plaintiff has suffered lost time, physical illness as a result of emotional distress, emotional distress, inconvenience, humiliation, frustration, loss of credit, damage to his creditworthiness and reputation.

52. Plaintiff has suffered actual damages as a result of the Defendants' conduct and inaction. For example, Mr. Fralish applied for insurance quotes during the relevant time period of October 2018 to early 2019. As a result of Defendants' inaccurate and derogatory credit reporting, Mr. Fralish received three denials from three insurance companies Allstate, Hagerty, and Geico. His Hagerty denial letter, dated May 13, 2019, stated that his vehicle was not eligible for coverage because of "an unacceptable driving record or claim history" and cited the consumer report provided by Lexis Nexis.

53. The inaccuracy in Mr. Fralish's consumer reports was exactly the kind of harm envisioned by Congress and which the FCRA was enacted to redress.

## COUNT I
## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
## DEFENDANTS VERISK and LEXIS NEXIS®

54. Mr. Fralish realleges and incorporates all other factual allegations set forth in the Complaint.

55. LEXIS and Verisk violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of

Mr. Fralish's reports and credit files it published and maintained concerning Mr. Fralish.

56. As a result of LEXIS and Verisks's violations of 15 U.S.C. §1681e(b) Mr. Fralish suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other physical injuries resulting from mental and emotional distress.

57. The violations by LEXIS and Verisk were willful, rendering each of them individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, LEXIS and Verisk were negligent, which entitles Mr. Fralish to recovery under 15 U.S.C. §1681o.

58. Mr. Fralish is entitled to recover actual damages, statutory damages, costs and attorney's fees from LEXIS and Verisk in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT II
## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i(a)(1)
### DEFENDANT LEXIS NEXIS®, Verisk

59. Mr. Fralish realleges and incorporates all other factual allegations set forth in the Complaint.

60. LEXIS and Verisk violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Mr. Fralish's consumer file.

61. As a result of LEXIS' and Verisks's violations of 15 U.S.C. §1681i(a)(1), Mr. Fralish suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

62. The violations by LEXIS and Verisk were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, LEXIS and Verisk were negligent, which entitles Mr. Fralish to recovery under 15 U.S.C. §1681o.

63. Mr. Fralish is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from LEXIS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)(2)(A)
### DEFENDANT LEXIS NEXIS®, Verisk

64. Mr. Fralish realleges and incorporates all other factual allegations as set forth in the Complaint.

65. LEXIS and Verisk violated 15 U.S.C. §1681i(a)(2)(A) by failing to provide Fralish with all the relevant information regarding Mr. Fralish's disputes.

66. As a result of LEXIS's and Verisk's violations of 15 U.S.C. §1681i(a)(2), Mr. Fralish suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

67. The violations by LEXIS and Verisk were willful, rendering Defendants individually liable for punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n. In the alternative, LEXIS and Verisk were negligent, which entitles Mr. Fralish to recovery under 15 U.S.C. §1681o.

68. Mr. Fralish is entitled to recover actual damages, statutory damages, costs and attorney's fees from LEXIS and Verisk in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)(4)
### (LEXIS NEXIS®and Verisk)

69. Mr. Fralish realleges and incorporates all other factual allegations set forth in the Complaint.

70. Verisk and LEXIS each violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by Mr.Fralish.

71. As a result of Verisk and LEXIS's violations of 15 U.S.C. §1681i(a)(4), Mr. Fralish suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

72. The violations by Verisk and LEXIS were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Verisk and LEXIS were negligent, which entitles Mr. Fralish to recovery under 15 U.S.C. §1681o.

73. Mr. Fralish is entitled to recover actual damages, statutory damages, costs and attorney's fees from Verisk and LEXIS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)(5)(A)

### (VERISK and LEXIS NEXIS®)

74. Mr. Fralish realleges and incorporates all other factual allegations set forth in the Complaint.

75. Verisk and LEXIS each violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Mr. Fralish's credit file or modify the item of information upon a lawful reinvestigation.

76. As a result of Verisk and LEXIS's violations of 15 U.S.C. §1681i(a)(5)(A), Mr. Fralish suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

77. The violations by Verisk and LEXIS were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Verisk and LEXIS were negligent, which entitles Mr. Fralish to recovery under 15 U.S.C. §1681o.

78. Mr. Fralish is entitled to recover actual damages, statutory damages, costs and attorney's fees from Verisk and LEXIS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT SIX: VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(1)(A)

### (STATE FARM)

79. Mr. Fralish realleges and incorporates all other factual allegations set forth in the Complaint.

80. On at least one occasion within the past two years, by example only and without limitation, State Farm violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Mr. Fralish disputes within the time required by the statute.

81. When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor), translates that dispute into an electronic form.

82. Upon information and belief, the electronic form is the method by which State Farm has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

83. It is extremely rare – certainly less than 1% of the time – that State Farm will receive a consumer's dispute sent through the CRAs other than through by an electronic system.

84. On information and belief, Mr. Fralish alleges that to date State Farm has never complained to the CRAs, including LEXIS and Verisk, about the amount of information it receives regarding a consumer dispute through the electronic system or through electronic disputes.

85. If State Farm receives an electronic consumer dispute form, it is aware that it may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

86. Based on the manner in which the CRAs responded to – or did not respond to – Mr. Fralish's disputes, representing that State Farm had "verified" the supposed accuracy of its reporting, Mr. Fralish alleges that Verisk and LEXIS did in fact forward Mr. Fralish's dispute via an electronic means to State Farm.

87. State Farm understood, or should have understood, the nature of Mr. Fralish's disputes when it received them from Verisk and LEXIS.

88. Notwithstanding the above, State Farm follows a standard and systemically unlawful process when it receives the dispute.  Basically, all State Farm does is review its own internal computer screen for the account and repeat back to the system the same information State Farm had already reported to the CRAs.  If it checks any outside source at all, it is only for meaningless verification that the account is associated with information belonging to Mr. Fralish.

89. As a result of State Farm's violations of 15 U.S.C. §1681s-2(b)(1)(A), Mr. Fralish suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

90. The violations by State Farm were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, State Farm was negligent, which entitles Mr. Fralish to recovery under 15 U.S.C. §1681o.

91. The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

92. State Farm was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the dispute procedures used regarding Mr. Fralish's disputes.

93. State Farm has been sued for its alleged failures to conduct lawful FCRA investigations.

94. On information and belief, Mr. Fralish alleges that the procedures followed regarding Mr. Fralish FCRA disputes were the procedures that State Farm intended its employees or agents to follow.

95. On information and belief, Mr. Fralish alleges that State Farm's employee or agent did not make a mistake (in the way in which he or she followed State Farm's procedures) when he or she received, processed and responded to the electronically-transmitted dispute from LEXIS and Verisk.

96. On information and belief, Mr. Fralish alleges that State Farm has not materially changed its FCRA investigation procedures after learning of its failures in this case.

97. Mr. Fralish is entitled to recover actual damages, statutory damages, costs and attorney's fees from State Farm in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT SEVEN: VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(1)(B)**

**(STATE FARM)**

98. Mr. Fralish realleges and incorporates all other factual allegations set forth in the Complaint.

99. On one or more occasions within the past two years, by example only and without limitation, State Farm violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

100. As Mr. Fralish detailed in Count Six, State Farm has elected to use an electronic system for its FCRA disputes received from Verisk and LEXIS.

101. State Farm is aware of the meaning of the dispute codes used by Verisk and LEXIS.

102. State Farm does not contend that the electronic system is an inadequate means to receive FCRA disputes through Verisk and LEXIS.

103. State Farm understood that Mr. Fralish's disputes stated that it was misreporting personal information about him, including an accident that did not occur, as well as improper amounts paid out, and an incorrect status of the case. These errors had an adverse impact on him.

104. Nevertheless, State Farm ignored such information and instead simply regurgitated the same derogatory information it had previously reported to the CRAs.

105. As a result of State Farm's violations of 15 U.S.C. §1681s-2(b)(1)(B), Mr. Fralish suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, lost time, physical injury resulting from other mental and emotional distress.

106. The violations by State Farm were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, State Farm was negligent, which entitles Mr. Fralish to recovery under 15 U.S.C. §1681o.

107. Mr. Fralish is entitled to recover actual damages, statutory damages, costs and attorney's fees from State Farm in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

108. Mr. Fralish demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief; and such other relief the Court deems just and proper.

TRIAL BY JURY IS DEMANDED

Respectfully submitted this 16th day of January 2020.

PRICE LAW GROUP, APC

*By: /s/ David A. Chami*
David A. Chami (AZ: 027585)
Price Law Group, APC
8245 N 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
F: (818) 600-5415
E: david@pricelawgroup.com
*Attorney for Plaintiff*
*John Fralish*